# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| WASTOW ENTERPRISES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:19-cv-00249-NKL |
| v. | ) |
| | ) |
| TRUCKMOVERS.COM, INC., and | ) |
| DEALER'S CHOICE TRUCKAWAY | ) |
| SYSTEM, INC. d/b/a TRUCKMOVERS | ) |
| | ) |
| Defendants. | |

## ORDER

The current dispute between Plaintiff Wastow Enterprises and Defendant Truckmovers relates to U.S. Patent No. 8,613,583 (issued Dec. 24, 2013) ("the '583 patent") which claims an apparatus for towing trucks known as a "Universal Folding Boom Trailer." The parties dispute the proper construction to be given to two terms within the '583 patent. The purpose of this order is to construe the disputed terms in the '583 patent.

### I.   Background

Plaintiff Wastow Enterprises is a company engaged in the business of developing, manufacturing, marketing, and selling devices for transporting trucks and buses that is majority owned and managed by Doyle E. Watkins, the inventor of the '583 patent. Defendants TruckMovers.com and Dealer's Choice Truckaway System, Inc. d/b/a Truckmovers (collectively "Truckmovers") are involved in the business of transporting trucks and buses. Wastow brings this lawsuit alleging that Truckmovers misappropriated Wastow's intellectual property, and that Truckmovers's "Z wing" towing system infringes Wastow's patent.

The '583 patent discloses a towing system that can be used to transport a truck, such as a semi-tractor truck, by towing the vehicle in a forward orientation. Towing the vehicle using this

system is beneficial as it complies with required highway vehicle height limits, prevents overloading of the weight limits on the steering tires on the towed vehicle as could occur if towed in a backward facing orientation, and eliminates the need to immobilize the steering wheel of the towed vehicle through non-ideal means such as a seat belt which prior systems have required.

Wastow's '583 patent includes fifteen claims, and the parties have narrowed their dispute to the construction of two terms used in the patent: (1) the term "device" as used in claims 1, 6, 7, 8, 9, 10, and 11; and (2) the phrase "a frame connector at an end of the single central beam" as used in claims 1, 3, 6, 8, 11, and 13. The Court adopts the parties' definitions for those terms where there is agreement, and makes the following findings regarding the remaining disputed terms after considering the parties' briefing and arguments made during the *Markman* hearing.

## II. Discussion

Claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). In construing claims, the Court begins with the words of the claims to define the scope of the patented invention. The Court must give claim terms their customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* at 1313. In some instances, the ordinary meaning of claim language may be "readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id. at* 1314.

In addition, the specification section of a patent is "always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315; *Aventis Pharm. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ("The specification provides the best source for construing a claim term and determining the inventor's intent regarding use.") (citation and quotation omitted). However, "a court may not read a limitation into a claim from the specification." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). For example, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. This is because "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* As a result, it is not proper to limit what is claimed to preferred embodiments or specific examples in the specification if the patentee did not demonstrate a clear intent to deviate from the claim terms' ordinary meaning in that way, or to otherwise disavow the claim scope. *Teleflex Inc. v. Ficosa N. Am., Corp.*, 299 F.3d 1313, 1326–28 (Fed. Cir. 2002). However, an inventor can disavow claim scope by including in the specification clear limiting descriptions of the invention. *Techtronic Indus. Co. v. Int'l Trade Comm'n,* 944 F.3d 901, 907 (Fed. Cir. 2019). While this disavowal must be clear and unequivocal, it does not need to be explicit. *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) (citing *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363–64 (Fed. Cir. 2016). Clear and unequivocal disavowal of claims lacking a particular feature can occur where the specification describes "the present invention" as having that feature. *Id.* (citing *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016)).

The prosecution history of a patent is another important source of intrinsic evidence. *Phillips,* 415 F.3d at 1315–16. The prosecution history consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* Arguments and amendments made during prosecution may shed light on the meaning of the claim language by demonstrating how the inventor understood the invention. *Id.*, *citing Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996). The prosecution history is useful to determine whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be. *Id.*

The Court now turns to the specific claim terms which are in dispute.

**A. "Device"**

The first term that requires construction is the term "device" as used in claims 1, 6, 7, 8, 9, 10, and 11. An illustrative example of this term in the context of the claims is: "A towing system, comprising: . . . a device removably mounted to the towing vehicle and to the towed vehicle, the device including" a front portion, middle portion, and rear portion. '583 Patent, claim 1. Wastow argues that the term "device" should be given its plain and ordinary meaning. Truckmovers contends that, given what is described in the patent's specifications, the broad term "device" should instead be construed to refer to a "universal folding boom trailer."

A patent's claims cannot "enlarge what is patented beyond what the inventor has described as the invention." *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003) (quoting *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001)). "When a patent . . . describes the features of the 'present invention' as a whole, this description limits the scope of the invention," *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also Techtronic Indus., Inc. v. International Trade Comm'n*, 944 F.3d 901,

4

907–08 (Fed. Cir. 2019). A patentee may disavow claim scope based on limiting statements such as "the present invention includes . . ." or "the present invention is . . ." or "all embodiments of the present invention are . . . ." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016).

The Background of the Invention section of the '583 patent begins by stating that "[t]he present invention relates generally to a method and apparatus for transporting and delivering multiple trucks, and in particular, to a universal folding boom trailer for loading, transporting and delivering trucks in compliance with Department of Transportation Regulations." '583 Patent, 1:19–23. In the Summary of the Invention section, it also states that "[t]he present invention overcomes all the shortcoming [sic] of the previous methods and apparatuses by providing a new Universal Folding Boom Trailer for transported [sic] multiple vehicles in a safe and legal manner." *Id.* at 1:62–65. In both of these sections the patentee expressly refers to the invention in its entirety as being a universal folding boom trailer. These statements support a conclusion that the inventor limited the term "device" specifically to the invention of a universal folding boom trailer, thereby impliedly disavowing claims lacking those features. *Cf. Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (limiting a claim term based on the specification where "[o]n at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention'," noting that "[t]he public is entitled to take the patentee at his word and the word was that the invention is a fuel filter.").

This proposed limitation construction is further supported in the specification. Throughout the patent, the language of the specification repeatedly emphasizes that the invention is directed to a universal folding boom trailer, with reference to a "universal folding boom trailer" over forty times. Every description, figure, title, and preferred embodiment of the

invention describes the device as being a universal folding boom trailer or a folding boom, and no embodiment other than a universal folding boom trailer is disclosed. "Disclaiming the ordinary meaning of a claim term—and thus, in effect, redefining it—can be affected through 'repeated and definitive remarks in the written description.'" *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1196 (Fed. Cir. 2013) (quoting *Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1374 (Fed.Cir.2008)). "[W]hen a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization". *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) (citations omitted); *see also Id.* (construing the term "node" narrowly as referencing a "pager" where "the words 'pager' and 'pager units' appear[ed] in the specification over 200 times, and, apart from the Abstract, the specification repeatedly and exclusively use[d] these words to refer to the devices in the patented system"); *Techtronic Industries Co. Ltd. v. International Trade Commission*, 944 F.3d 901, 907–08 (Fed. Cir. 2019) (limiting the claims in light of the specification where "by consistently representing the invention as the placement of the detector in the wall console, [the patentee] ha[d] thus effected a disavowal of alternative locations."); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) (finding the claim term "board" to be limited to wooden boards due to consistent statements in the specification and prosecution history describing the "boards" as made from wood)).

Here, Wastow repeatedly, consistently, and exclusively used the term universal folding boom trailer when describing the invention, and the only reference in the specification to the term "device" equates it with a universal folding boom. '583 Patent, 2:61–63 ("FIG. 7 illustrates a top view of the Universal Folding Boom as shown in FIG. 6, and further shows a laterally central longitudinal axis A-A of a rear portion of the device."). The specification also makes

repeated reference to the "folded position 100" and "unfolded position 200" present in all of the disclosed embodiments, a feature that is also included when describing the preferred method of operation, and one that is not otherwise explicitly expressed in the claim terms. *See, e.g.*, '583 Patent, 3:7–9, 14–15 ("A Universal Folding Boom Trailer (30) is there shown comprising: . . . a boom trailer (30) including a rotatable boom (38) . . . wherein the boom (38) is rotatable from a folded position (100) for trailering to an unfolded position (200) . . . ."); *Id.* at 4:15–19 ("In the preferred method of operation, the Universal Folding Boom Trailer 30 is towed by a personal pickup truck 36 in the folded position 100, illustrated in FIGS. 3 and 4, to its pickup destination. The boom 38 is unfolded by operating a winch 44 (FIG. 7)."). Wastow does not identify any device that is not or could not be a universal folding boom trailer, and the specification never suggests that the device can be anything other than the described folding boom trailer.

Wastow asserts that he has not disclaimed or relinquished claim scope, and that the term device should be given its plain and ordinary meaning. Wastow cites as support a number of district court cases which held that the term device was entitled to its plain and ordinary meaning. Wastow correctly identifies that there is a "heavy presumption" that claim terms should be given their ordinary and customary meaning, *Massachusetts Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1118 (Fed. Cir. 2016) (citing *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)), but given the fact-specific analysis required in evaluating the claim terms of a particular patent, citation to other instances where a claim term was not limited is alone insufficient to show that the term must be interpreted a certain way in a given context. The Court is not persuaded by the reasoning of Wastow's cited-to cases, and addresses them in turn.

In *Saffran v. Johnson & Johnson*, 740 F. Supp. 2d 899 (E.D. Tex. 2010) the district court declined to limit the term device to mean a "sheet" and gave the term its plain and ordinary meaning, but the Federal Circuit instead later found the term limited due to statements made during prosecution, further noting that "[e]xtensive, consistent usage in the specification" and the fact that every drawing depicted the claimed device as a sheet suggested that the term "device" should be understood as a sheet. *Saffran v. Johnson & Johnson*, 712 F.3d 549, 558 (Fed. Cir. 2013). In light of the Federal Circuit's reasoning supporting reversing the interpretation of device in this context, *Saffran* would now serve to support Defendants' construction of the term device given the "extensive, consistent usage" by the patentee of the term universal folding boom trailer. The remainder of Wastow's cited-to cases on this point are similarly distinguishable on their facts. *BlackBerry Ltd. v. Typo Prods. LLC*, No. 14-cv-00023-WHO, 2014 WL 6603126 (N.D. Cal. Nov. 20, 2014) (declining to define a "device" as "a messaging device with an integral keyboard optimized for use substantially with the thumbs" where the claims recited devices other than a "messaging device" and keyboard other than an "integral keyboard."); *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684-JWL, 2014 WL 5089402, *21 (D. Kan. Oct. 9, 2014) (declining to construe the term "device" where "Defendants concede that 'device' has a plain and ordinary meaning, and defendants [did] not propose[] a different construction or explain[] why the term should be interpreted other that in accord with that plain meaning"); *Nonend Inventions N.V. v. Spotify USA Inc.*, No. 12-1041-GMS, slip op. at 11–12 (D. Del. Aug. 1, 2014) (declining to define "device" as a "peer node" based on implications in the patent where the term had also been used to refer to a "computer readable medium" and where "there [was] no indication in the specification that the 'device' should be cabined to only 'peer node.'"); *Crossroads Sys. v. 3PAR, Inc.*, No. A-10-CA-652-SS, 2011 WL

13112112, at *4 (W.D. Tex. Nov. 8, 2011) (declining to construe a "device" as a "computer" where the term "computer" would have been similarly ambiguous and defendant "ha[d] not demonstrated to the Court that people of ordinary skill in the art would even substantially agree on the definition of a 'computer,' much less agree that the 'devices' described in the '035 patent meet that definition"). In this case, construing the term device to mean a universal folding boom trailer would not cause any internal contradictions between the patent's claims, and there is indication in the specification through references to "the present invention" and repeated usage of the particular term "universal folding boom trailer" that the patentee intended to reference a universal folding boom trailer.

Wastow also argues that the term device should not be limited by Truckmovers's proposed construction as this would cause a conflict between the use of the term as used in the preamble to claim 6 with the way the term device is used in claims 1 and 11. Though "a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention,'" *Artic Cat Inc. v. GEP Power Prods.*, 919 F.3d 1320, 1329 (Fed. Cir. 2019) (quoting *Catalina Mkg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)), "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). Here, Truckmover's proposed construction does not require different definitions of "device" to be used in different claims as it consistently refers only to a universal folding boom trailer. This construction applies equally to the "device for a towing system" contemplated in claim 6, and substitution of the term

universal folding boom trailer in place of the term device as used in the preamble for this claim would not otherwise limit the claim.

The '583 patent's specification therefore makes clear that the claim term "device" is limited to a universal folding boom trailer. Although there was no explicit disavowal of other devices, the patentees description of "the present invention" as referring to a universal folding boom trailer and the repeated, consistent use of the complete term "universal folding boom trailer" to refer to the claimed device together support the conclusion that the patentee implicitly disavowed claim terms lacking a "universal folding boom trailer." Accordingly, the Court adopts Truckmovers's proposed construction.

**B. "A frame connector at an end of the single central beam"**

The second term that requires construction is the phrase "a frame connector at an end of the single central beam" as used in claims 1, 3, 6, 8, 11, and 13. An illustrative example of this term is as follows:

> A towing system, comprising: . . . a rear portion at a different elevation from the front portion for removably mounting to both the axle and the frame of the towed vehicle and supporting the towed vehicle from underneath the towed vehicle, wherein the front portion and the rear portions are joined to the middle portion in a rigid configuration, the rear portion further having a front axle connector to which the axle of the towed vehicle is attached and a single central beam with *a frame connector at an end of the single central beam* to which the frame of the towed vehicle is attached, wherein the rear portion is adjustable and slides forward and aft for hauling various lengths of the towed vehicle . . .

'583 Patent, 6:34–46 (claim 1) (emphasis added). Below is an illustrative drawing from the specification which includes the frame connector and single central beam as part of the rear portion of the claimed towing system.



FIG - 4

Wastow argues that this phrase should be given its plain and ordinary meaning, however Truckmovers contend that this phrase should instead be limited to "a frame connector that is attached to the end of the single central beam at an attachment point that is adjustable and slides forward and aft."

The specification of the '583 patent has a single description of the frame connector: "[The] frame connector 70 is connected to the frame of the semi tractor truck 34 at attachment point 72 and secured by chains 74. The attachment point 72 is adjustable and slides forward and aft for hauling various lengths of trucks." '583 Patent, 4:48–58. Both the frame connector and attachment point are part of the rear portion of the towing system which is used for "adjustably and removably mounting to an axle and a frame of a towed vehicle and supporting the towed vehicle from underneath. . . . [and] is adjustable and slides forward and aft for hauling various lengths of the towed vehicle in a forward-facing direction." '583 Patent, Abstract.

According to Truckmovers, in order for the frame connector to adjust to accommodate various lengths of trucks, the frame connector must move relative to the front axle connector instead of being affixed to an end of the single central beam. Truckmovers argues that, without this limitation, the rear portion which includes the frame connector and front axle connector would not have an adjustable distance as contemplated by the claims capable of accommodating attachment to a variety of differently sized trucks. *See, e.g.*,'583 Patent, 6:34–46; 7:5–17; 8:1–15.

Under this interpretation, the frame connector being "at an end of the single central beam" does not mean that it is at the very end of the beam, but that it lies at a point that can be adjusted forward and aft on the beam.

The Court does not find Truckmovers's proposed construction convincing. The claim language covering the frame connector requires only that it be "at an end of the single central beam," and that it is the rear portion that slides forward and aft for adjusting to tow different vehicles. The claims do not require that the frame connector be attached at an attachment point that is adjustable with respect to the single central beam, nor that it be attached at an attachment point that slides forward or aft on the single central beam. The claims do not require the adjustability of rear portion for attachment to a towed vehicle be accomplished in any particular way, and the claim language therefore should not be construed as to require that the frame connector be adjustably attached to the central beam. Though an apparatus that was adjustable in this way may be covered by the '583 patent, this is not a limitation built into the claim language itself.

Additionally, accepting Truckmovers's proposed language would render certain claim language superfluous. Substituting this proposed construction into claim 1 would produce the following claim: "a single central beam with a frame connector that is attached to the end of the single central beam at an attachment point that is adjustable and slides forward and aft to which the frame of the towed vehicle is attached, wherein the rear portion is adjustable and slides forward and aft for hauling various lengths of the towed vehicle." If the purpose of the inserted language is to describe a frame connector that adjusts for hauling towed vehicles of various lengths, then the existing language describing an adjustable rear portion that moves in this same manner for this same purpose would now appear superfluous. The claim language plainly

contemplates a frame connector at an end of a single central beam where the beam and attached frame connector slide together as part of the adjustable rear portion. It is by the sliding of the beam that the attachment point can be adjusted for towing vehicles of various lengths. This construction is also supported by the prosecution history which noted that the component that slides when making adjustments is the single central beam (and not the frame connector). Doc. 48-3, at 3 (Excerpt of 13/690,462, 7/6/13 Amendment) (distinguishing the invention from the prior art by claiming that "none of the cited references describe the 'single central beam' of the recited rear portion, which is adjustable by sliding lengthwise.").

Here, the plain and ordinary meaning of the disputed phrase is preferable to a proposed construction that is not required by the claim language and which would render existing claim language superfluous. *See Merck & Co., Inc. v. Teva Pharm. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."); *see also Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (construing claim to avoid rendering the "thirty degree" claim limitation superfluous); *Gen. Am. Transp. Corp. v. Cryo–Trans, Inc.,* 93 F.3d 766, 770 (Fed. Cir. 1996) (rejecting the district court's claim construction because it rendered superfluous the claim requirement for openings adjacent to the end walls). The Court therefore adopts Wastow's proposed construction.

**IT IS SO ORDERED.**

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 26, 2020
Jefferson City, Missouri